Kevy W. Kaiserman and George W. Neff, Appellants, *v.* Springfield Township, Appellee.

Argued October 8, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Milton S. Lazaroff,* for appellants.

*Thomas M. Garrity,* with him *Richard E. Buck,* for appellee.

OPINION BY JUDGE MENCER, December 10, 1975:

This is a zoning appeal from the Court of Common Pleas of Montgomery County which dismissed an appeal from the decision of the Board of Commissioners of Springfield Township (Board). That decision upheld the constitutionality of the Springfield Township Zoning Ordinance of 1940 (Ordinance) and denied the request of Kevy W. Kaiserman and George W. Neff (appellants) for a curative amendment.

We are faced, in this case, with a challenge to a zoning ordinance on the ground that it is unconstitutional because it results in a de facto exclusion of apartments. Appellants rely on *Girsh Appeal,* 437 Pa. 237, 263 A. 2d 395 (1970), and *Township of Willistown v. Chesterdale Farms, Inc.,* Pa. , 341 A. 2d 466 (1975). *Girsh,* of course, prohibited a township from totally excluding multifamily dwellings by zoning ordinance, while *Willistown* found that an ordinance setting aside a "token" amount of land for multifamily dwellings is equally unconstitutional.

The appellants in this case ask us to extend these decisions and to conclude, as a matter of law, that a zoning ordinance by virtue of which 10.4% of a township's land is zoned for multifamily dwellings becomes exclusionary *in its effects* when the land previously zoned for apartments has become largely developed with single-family homes. This development, they assert, has left only a "token" amount of the township developed with multifamily dwellings.

Briefly, the case reaches us in the following manner. On March 7, 1973, appellants filed a petition with the Board, claiming, pursuant to Section 1004(1)(b) of the Pennsylvania Municipalities Planning Code (MPC),[1] that the Ordinance was unconstitutional and invalid. At the

1. Act of July 31, 1968, P. L. 805, *as amended,* 53 P.S. §11004(1)(b).

same time they submitted a curative amendment under Section 609.1 of the MPC, 53 P.S. §10609.1. The Board properly fixed a date for hearing, gave notice, and conducted hearings on May 3 and 17, 1973; June 6, 14, and 27, 1973; and July 10, 1973.

The Board's decision, delayed with the agreement of both parties, was delivered on September 24, 1973. In that decision the Board upheld the validity of the Ordinance against the challenge and hence did not adopt the curative amendment. A zoning appeal notice was filed with the Court of Common Pleas of Montgomery County on October 15, 1973. The lower court dismissed the appeal in a decision dated February 7, 1975. Neither the Board nor the Court of Common Pleas made specific findings of fact.[2] However, we are able to find, in our reading of the lower court's opinion, statements which approximate findings of fact and which we in this instance deem to be sufficient for our review.

A zoning ordinance is presumed valid and constitutional; therefore, one challenging the ordinance has the heavy burden of proving otherwise. *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 333 A. 2d 239 (1975). This is especially so when the ordinance is being challenged because it has an alleged exclusionary effect even though it may not be exclusionary on its face.

"When, however, a challenger alleges that there is de factor exclusionary zoning, he carries the heavy burden of showing that, even though on its face an ordinance permits a specific use, the ordinance as applied effectively prohibits such use." *Hodge v. Zoning Hearing Board of West Bradford Township*, 11

2. We might at this time repeat the observation of Judge KRAMER in *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Comonwealth Ct. 404, 333 A. 2d 239 (1975), that such findings of fact, in complicated cases of this nature, would be most helpful to this Court on appeal.

Pa. Commonwealth Ct. 311, 320, 312 A. 2d 813, 818 (1973).

Appellants have failed to sustain this burden. We therefore affirm.

Our scope of review, in cases where the lower court has taken no additional evidence and has relied on the evidence presented to the governing body, is limited to a determination of whether the lower court abused its discretion or committed an error of law. *Ellick, supra.* Appellants contend that under the facts in this record the lower court erred in deciding that the Ordinance was not de facto exclusionary. At the outset, we wish to note that the question of whether a zoning ordinance is exclusionary in *its effect,* because it fails to provide for a "fair share" of land for multifamily dwellings, always depends on the unique facts in each case and thus can only be decided on a case-by-case basis. *Willistown Township v. Chesterdale Farms, Inc.,* 7 Pa. Commonwealth Ct. 453, 300 A. 2d 107 (1973) (opinion in support of affirmance by MENCER, J.). We must therefore review the facts in this case.

Appellants are the legal owners of 47.59 acres of land in what is known as the Stotesbury Tract, a former estate located in the Wyndmoor section of Springfield Township. The land is undeveloped, except for a dilapidated mansion and a formal garden now overgrown. It is one of the few remaining large, undeveloped tracts in the township. At this time the land is zoned partly "A Residential" and partly "AA Residential." Both zones permit only single-family detached dwellings to be built on lots of 12,500 and 25,000 square feet, respectively.

The township itself covers an area of 3,942 acres immediately northwest of the City of Philadelphia, with which it shares a common boundary. Since 1940, pursuant to the zoning ordinance in question here, the township has had 408 acres of land zoned to allow multifamily dwellings by special exception. Roughly 304 of these

acres are zoned "C" or "D" Residential," and 104 acres are zoned either "Business 1" or "Business 2." Although subsequent amendments have increased the number of square feet per family required for multiple-family dwellings in "D Residential," "Business 1," and "Business 2" districts, the number of acres theoretically available for multifamily dwellings remains the same. It is uncontested that there is no appreciable amount of vacant land remaining to be developed in any of the four districts zoned for multifamily dwellings. The record, however, does not reveal the specific number of acres which remain undeveloped, if any.

Appellants contend that the practical effect of the zoning ordinance, coupled with the pattern of development in the township, is that only six-tenths of one percent of the land in the township is actually committed to multifamily dwellings. They therefore urge us to find that the Ordinance excludes all but a "token" amount of multifamily development. Appellants rely on the holdings in *Girsh, supra,* and *Willistown Township v. Chesterdale Farms, Inc.,*      Pa.     , 341 A. 2d 466 (1975). In each of those cases, however, the complete exclusion and "token" allowance of multifamily dwellings, respectively, was accomplished by the zoning ordinance alone. It was therefore deemed sufficient to show either a total exclusion of apartment dwellings or that the percentage of land set aside for those dwellings was unreasonably small in relation to the need in the township. Appellants here have at no time contended that the acreage provided for apartment dwellings was, at the time the Ordinance was passed, a "token" amount. More importantly, they make no claim that the 408 acres provided for multifamily dwellings *has become* less than a "fair share" by virtue of the increasing need for multifamily dwellings in the township. Stated most succiently, appellants ask us to invalidate the Ordinance because it might be more advantageous for them to develop the land they

currently own than to assemble already developed land for their purposes. We conclude that this case is controlled by *Groff Appeal,* 1 Pa. Commonwealth Ct. 439, 274 A. 2d 574 (1971),[3] in which we stated:

"While it may be inherently discriminatory for a township to totally exclude a use from its borders, we fail to see the analogy by which we could reason that a legitimately appropriated area for a specific use which has been saturated is in the same posture as a total prohibition of that use within a municipality." 1 Pa. Commonwealth Ct. at 442, 274 A. 2d at 575.

Where de factor exclusion is alleged, as in this case, the facts supporting such an allegation should appear clearly in the record. *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 11 Pa. Commonwealth Ct. 607, 314 A. 2d 565 (1974).

The six hearings before the Board produced a great deal of testimony, much of it by appellants' expert witness, Manny J. Neff. Mr. Neff stated that many of the single-family homes now on land zoned for multifamily dwellings had been developed prior to the passage of the 1940 ordinance, some perhaps as early as 1916. There was no attempt, however, to show why this land could not be developed *today* with multifamily dwellings. Mr. Neff did assert that the existing buildings must, of necessity, be demolished before apartments could be built. However, there is no testimony as to why this procedure, common in other developed areas, is not viable in Springfield Township.

---

3. In essence, we agree with the comment in R. Ryan, Pennsylvania Zoning Law and Practice §3.3.4, at 39 (Supp. 1974):

"The issue indicated in the Groff case is uniquely factual. In a developed township, it is common to find areas 'full,' and the courts should not require that the municipality continually rezone land to apartment, commercial or trailer uses in order to make land continuously available for these purposes. Indeed this would defeat the purposes of zoning."

To allow open ground in a township to be used for any purpose whatever solely because little or no undeveloped land remains in areas properly zoned for that purpose would be the antithesis of that sound planning which is the rationale for all zoning.

It is possible to imagine cases in which a zoning ordinance on its face purports to set aside a substantial portion of a township for a given use, while in reality the land is so developed, located, or otherwise encumbered that the chances of assembling land suitable for that use are virtually nil.

The record in this case, however, does not develop facts sufficient to support a finding of de facto exclusion of multifamily dwellings. Appellants have not carried the heavy burden of proof placed on them when they sought to challenge the constitutionality of the Ordinance.

Appellants next contend that the Springfield Township Zoning Ordinance, by requiring that a special exception be granted before multifamily housing can be constructed in any of the permitted districts, forecloses, as a practical matter, the possibility of building multifamily dwellings in the township. Notwithstanding appellants' assertion that the Ordinance makes the requirements for obtaining a special exception the same as those for a variance, we must disagree.

A use which requires a special exception is a *permitted* use in an area, and the burden is on the township, if it seeks to deny the petition, to show that the use would adversely affect the health, safety, and morals of the community. *Temple University v. Zoning Board of Adjustment*, 414 Pa. 191, 199 A. 2d 415 (1964) ; *Mason v. Schaefer*, 410 Pa. 239, 189 A. 2d 178 (1963).

An application for a variance, on the other hand, places the burden on the applicant to show that, even though the use is prohibited, a unique hardship is imposed on the particular property as a result of the zoning restrictions. *Ellick, supra; Township of Haverford v.*

*Spica,* 16 Pa. Commonwealth Ct. 326, 328 A. 2d 878 (1974). Persons claiming that a township has used an unreasonably restrictive standard in denying a special exception have recourse to a reviewing court for their remedy. We cannot find that an ordinance is unconstitutional because it only provides for multiple-family dwellings by special exception.

Order affirmed.